LODGED

2009 FEB 25   AM 11: 49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1   JOHN C. CRUDEN
    Acting Assistant Attorney General
2   Environment & Natural Resources Division
    United States Department of Justice
3
    ELISE S. FELDMAN
4   Environment Enforcement Section
    Environment & Natural Resources Division
5   United States Department of Justice
    301 Howard Street, Suite 1050
6   San Francisco, California 94105
    Telephone:  (415) 744-6470
7   Telecopier:  (415) 744-6476
8
9   Attorneys for Plaintiff United States of America
10
11  Additional Counsel Listed on Next Page
12
13            IN THE UNITED STATES DISTRICT COURT
14              CENTRAL DISTRICT OF CALIFORNIA
                      WESTERN DIVISION
15
16  UNITED STATES OF AMERICA and
    CALIFORNIA DEPARTMENT OF
17  TOXIC SUBSTANCES CONTROL
18            Plaintiffs,
19        v.
20  VALLEY- PROCTOR LLC
21
22            Defendant.
23
24
25
26
27
28

FILED
CLERK, U.S. DISTRICT COURT

APR 1 3 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

JS-6

CV09-1331   ABC   AMx

CIVIL ACTION NO.

CONSENT DECREE

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  JAMES HUMES
   Chief Assistant Attorney General
3  KEN ALEX
   Senior Assistant Attorney General
4  DONALD A. ROBINSON
   Supervising Deputy Attorney General
5  ANN RUSHTON
   California State Bar No. 62597
6  Deputy Attorney General
   300 South Spring Street
7  Los Angeles, California 90013
   Telephone: (213) 897-2608
8
9  Attorneys for the California
   Department of Toxic Substances Control
10
11 PAUL D. RASMUSSEN
   Dongell Lawrence Finney  LLP
12 707 Wilshire Boulevard, 27th Floor
   Los Angeles, CA 90017-3609
13 Telephone: (213)-943-6100
   Facsimile:   (213)-943-6101
14 e-mail: PRasmussen@dlflawyers.com
15
16 Attorney for Defendant Valley-Proctor LLC
17
18
19
20
21
22
23
24
25
26
27
28

-2-

Attachment A
-6-

## TABLE OF CONTENTS

Page

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. REIMBURSEMENT OF RESPONSE COSTS . . . . . . . . . . . . . . . . . . . 9

VI. FAILURE TO COMPLY WITH REQUIREMENTS. . . . . . . . . . . . . . 13

VII. NOTICE TO SUCCESSORS-IN-TITLE . . . . . . . . . . . . . . . . . . . . . 15

VIII. COVENANT NOT TO SUE BY PLAINTIFFS . . . . . . . . . . . . . . . . . .16

IX. COVENANT NOT TO SUE BY SETTLING DEFENDANT . . . . . . . . 17

X. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . . . 18

XI. SITE ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XII. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XIII. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XIV. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . 23

XV. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 24

XVI. INTEGRATION/APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . 24

XVII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . 25

XVIII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XIX. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XX. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I.  BACKGROUND

A.     The United States of America ("United States"), on behalf of the
Administrator of the United States Environmental Protection Agency ("EPA"),
and the State of California Department of Toxic Substances Control ("DTSC"),
have filed a complaint in this matter pursuant to Section 107 of the
Comprehensive Environmental Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. § 9607, seeking reimbursement of response costs
incurred for response actions taken at or in connection with the release or
threatened release of hazardous substances at the Puente Valley Operable Unit
("PVOU") of the San Gabriel Valley Superfund Site, Area 4, Los Angeles County,
California (the "Site").

B.     This Consent Decree provides for the reimbursement of a portion of
the United States' Past  Response Costs and a portion of the DTSC's Past
Response Costs at this Site by Valley-Proctor LLC (f/k/a Valley Proctor
Partnership) ("Settling Defendant").

C.     By entering into this Consent Decree, Settling Defendant does not
admit liability to or arising out of the transactions or occurrences alleged in the
Complaint or to any other person related to the Site.

D.  The United States, DTSC, and Settling Defendant agree, and this Court
by entering this Consent Decree finds, that this Consent Decree has been
negotiated by the Parties in good faith, that settlement of this matter will avoid
prolonged and complicated litigation between the Parties, and that this Consent
Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is
ORDERED, ADJUDGED, AND DECREED:

## II.  JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. §§ 6973, 9606, 9607, and 9613(b), and also has personal jurisdiction over Settling Defendant in this action. Settling Defendant consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III.   PARTIES BOUND

2.      This Consent Decree is binding upon the United States, DTSC, and upon Settling Defendant.  Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

### IV.   DEFINITIONS

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

a.      "Basin-wide Response Costs" shall mean costs, including but not limited to direct and indirect costs, including accrued Interest, that the United States has paid for basin-wide (non-operable unit) response actions in connection with the San Gabriel Valley Superfund Sites, Areas 1- 4.

b.  "Carrier Consent Decree" shall mean the consent decree entered on April 28, 2006 in the matter of United States v. Carrier Corporation, Civ. Action No. 05-6022 ABC (FMOx)(C.D. Cal.), relevant portions of which are attached hereto as Appendix A.

c.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.

Attachment A
-9-

d.     "Consent Decree" shall mean this Consent Decree and Appendix A attached hereto.

e.     "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day falls on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

f.     "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

g.     "DTSC" shall mean the State of California Department of Toxic Substances Control  and any successor departments or agencies.

h.     "Effective Date" shall mean the date of entry of this Consent Decree.

i.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies, or instrumentalities of the United States EPA.

j.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

k.     "ESD" shall mean the Explanation of Significant Differences issued by EPA on June 14, 2005 for the Record of Decision.

l.     "Extended Required Sale Date" shall mean a date approved by EPA pursuant to Paragraph 5.c. by which Settling Defendant must effectuate a Transfer of the Property, once a written request has been made by Settling Defendant for an extension of the Required Sale Date.

m.     "Facility" shall mean the Site.

n.     "Fair Market Value," except in the event of a transfer by foreclosure, shall mean the price at which the Property or any portion thereof

-6-

would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.  In the event of a transfer by foreclosure, "Fair Market Value" shall mean the amount obtained at the foreclosure sale.

o.     "Future DTSC Response Costs" shall mean all costs, including but not limited to Oversight Costs, direct and indirect costs, and Basin-wide Response Costs allocated to the Site, including Interest, that DTSC pays or incurs at or relating to the Site after the date of entry of this Consent Decree, but prior to the later of (i) the date 8 years from the Operational and Functional Date of the Carrier Consent Decree, or (ii) the date of issuance of a final Record of Decision for the Site.

p.     "Future Response Costs" shall mean all costs, including but not limited to Oversight Costs, direct and indirect costs, and Basin-wide Response Costs allocated to the Site, including Interest, that the United States or any third party pays or incurs at or relating to the Site after the date of entry of this Consent Decree, but prior to the later of (i) the date 8 years from the Operational and Functional Date of the Carrier Consent Decree, or (ii) the date of issuance of a final Record of Decision for the Site.

q.     "Interest" shall mean interest at the applicable rate specified for interest on investments of the Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

r.     "Net Sales Proceeds," shall mean the total value of all consideration received by Settling Defendant for all Transfers of the Property, combined, less (i) closing costs (including appraisal costs and real estate commissions incurred by a California-licensed real estate broker other than

-7-

1  Settling Defendant), limited to those reasonably and necessarily incurred, as
2  determined by EPA, and actually paid by Settling Defendant associated with the
3  Transfer of the Property or any portion thereof, and (ii) federal and state taxes
4  owed on the proceeds.

5          s.     "Oversight Costs" shall mean all direct and indirect costs,
6  including Interest, that the United States or the DTSC incurs in connection with
7  monitoring and supervising performance of the Response Work by other persons.

8          t.     "Paragraph" shall mean a portion of this Consent Decree
9  identified by an Arabic numeral or an upper or lower case letter.

10

11          q.     "Parties" shall mean the United States, DTSC, and the Settling
12  Defendant.

13          r.     "Past DTSC Response Costs" shall mean all costs, including
14  but not limited to Oversight Costs, direct and indirect costs, and Basin-wide
15  Response Costs allocated to the Site, including Interest, that DTSC has paid or
16  incurred at or relating to the Site through and including the date of entry of this
17  Consent Decree.

18          s.     "Past Response Costs" shall mean all costs, including but not
19  limited to Oversight Costs, direct and indirect costs, and Basin-wide Response
20  Costs allocated to the Site, including Interest, that the United States or any third
21  party has paid or incurred at or relating to the Site through and including the date
22  of entry of this Consent Decree.

23          t.     "Plaintiffs" shall mean the United States and DTSC.

24          u.     "Property" shall mean 334 El Encanto Road, City of
25  Industry, California 91745 (a/k/a 15430 Proctor Avenue, City of Industry,
26  California 91745) identified by Assessor's Parcel No. 8208 027 014 07 000.

27          v.     "Record of Decision" or "ROD" shall mean the September 30,
28  1998 EPA Interim Record of Decision for the Puente Valley Operable Unit (Area

4) of the San Gabriel Valley Superfund Sites, Areas 1-4.

       w.    "Required Sale Date" shall mean the date one year after the Effective Date.

       x.    "Response Work" shall mean the design and implementation of any remedial measures, including the operation and maintenance thereof, encompassed within the Record of Decision as modified by the ESD.

       y.    "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

       z.    "Settling Defendant" shall mean Valley-Proctor LLC (f/k/a Valley Proctor Partnership).

       aa.    "Site" shall mean the facility, which consists of an area of groundwater contamination in Los Angeles County, California, located in the geographic area designated on the National Priorities List as the San Gabriel Valley Superfund Site, Area 4 [see 49 Fed. Reg. 19480 (1984)], and identified as the Puente Valley Operable Unit.

       bb.    "Transfer" shall mean the sale of the Property by Settling Defendant (or its successors or heirs), or foreclosure by the United States.

       cc.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## V.  REIMBURSEMENT OF RESPONSE COSTS

4.    <u>Payment to EPA and DTSC.</u>

       a.    <u>Payment to DTSC.</u>  Settling Defendant shall, within thirty (30) working Days after entry of this Consent Decree, remit the principal of five thousand dollars ($5,000) in reimbursement of Past Response Costs to DTSC. Payment to DTSC shall be made by certified check or cashier's check, made payable to "Cashier of the Department of Toxic Substances Control," Department of Toxic Substances Control, State of California, Accounting Office, 1001 I Street,

-9-

Sacramento, California, 95812. Settling Defendant shall send a transmittal letter with the check, referencing the San Gabriel Superfund Sites, Area 4 (Puente Valley Operable Unit), Project Code No. 300346. Settling Defendant also shall send notice, including a copy of the check and transmittal letter, to DTSC as provided in Section XIV (Notices and Submissions).

      b.    Payments to EPA.

Settling Defendant shall pay the United States $550,000 plus Interest as set forth below. If the Net Sales Proceeds are sufficient, Settling Defendant shall make such payment within five business days of the Transfer. If the Net Sales Proceeds are less than $550,000, Settling Defendant shall pay as follows: 1. within five business days of the Transfer, all of the Net Sales Proceeds to the United States; and 2. within twenty business days of the Transfer, Settling Defendant shall pay any shortfall to the United States so that the total payment to the United States is $550,000 plus Interest. Interest will begin to accrue sixty (60) days from the Effective Date and run through the date of payment in full.

      c.    Payment to the United States shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with current EFT procedures, referencing the USAO File Number, EPA Region IX, the Site/Spill ID Number 09-8V, and DOJ Case Number 90-11-2-09232. Payment shall be made in accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the Central District of California following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business Day. Settling Defendant shall send notice to the EPA and the DOJ that payment has been made in accordance with Section XIV (Notices and Submissions) and to David Wood, PMD-6, Section Chief, U.S. EPA, Region IX, 75 Hawthorne Street, San Francisco, California,

94105.

        d.     The five hundred fifty thousand dollars ($550,000), plus Interest, paid by Settling Defendant to the United States shall be deposited in the "San Gabriel Valley Superfund Sites, Area 4, Special Account" within the EPA Hazardous Substance Superfund. This Special Account shall be retained and used to conduct or finance response actions at or in connection with the Site or the San Gabriel Valley Superfund Sites (Areas 1- 4), or may be transferred by the EPA from this Special Account to the EPA Hazardous Substance Superfund.

     5.    <u>Sale of Property.</u>

        a.     Settling Defendant agrees that it will not sell, assign, convey, encumber, or exchange the Property, or any portion thereof, except by means of a Transfer.

        b.     Settling Defendant shall sell the Property by effecting a Transfer of all portions of the Property by the Required Sale Date at a price sufficient to ensure that the United States will receive $550,000, plus Interest (as described in paragraph 4(b)) from the Net Sales Proceeds. If the sales price is not sufficient to ensure that the United States will receive the full $550,000, plus Interest (as described in paragraph 4(b)) from the Net Sale Proceeds, then Settling Defendant shall sell the Property at Fair Market Value and Settling Defendant shall provide EPA with documentation sufficient to show the total value of all consideration received by Settling Defendant for each Transfer at the time of each Transfer, the amount of the proceeds of the Transfer, and the amounts corresponding to closing costs and federal and state taxes. This documentation shall include, but not be limited to, the report of an Appraisal (to be paid for by Settling Defendant but deductible as part of the closing costs as set forth above). The documentation shall also include, either as part of the report or separately, (1) a tax statement showing the assessed valuation of the Property or any portion

-11-

thereof for each of the three years immediately preceding the Transfer and (2) a schedule showing all outstanding indebtedness on the Property or any portion thereof.

c.     The Settling Defendant may make a request to EPA for an extension of time for the Required Sale Date to take effect. Any such request shall be made in writing to EPA's Project Coordinator at least 30 days prior to the Required Sale Date. If EPA agrees to the extension of time, it shall notify Settling Defendant in writing of the Extended Required Sale Date. EPA's decision on the extension of time shall not be subject to the dispute resolution procedures of this Consent Decree or to judicial review.

d.     If Settling Defendant fails to sell the Property by the Required Sale Date, or by any Extended Required Sale Date, EPA may take appropriate action to perfect a lien on the Property pursuant to Section 107(l) of CERCLA, 42 U.S.C. § 9607(l). Settling Defendant hereby agrees not to object to the imposition of a CERCLA 107(l) lien on the Property if the Property is not sold by the Required Sale Date, or by any Extended Required Sale Date.

e.     Once EPA has perfected its lien pursuant to Section 107(l), 42 U.S.C. § 9607(l), EPA may initiate action to foreclose on its lien. EPA shall provide notice of its decision to take action to foreclose on its liens at least 60 days before it takes such action. Settling Defendant shall not oppose such foreclosure action, and shall reimburse EPA its costs of foreclosure, including attorneys' fees, in addition to any amounts due pursuant to this Consent Decree. Such payments shall be considered reimbursement of response costs and shall be made in the manner described in Paragraph 4.c. If EPA forecloses on its liens, the United States shall be entitled to the first $550,000 of the Net Sales Proceeds, plus Interest (as described in paragraph 4(b)) through the date of payment. Settling Defendant shall be entitled to the remainder of the Net Sales Proceeds.

-12-

## VI.  FAILURE TO COMPLY WITH REQUIREMENTS

6.     <u>Interest on Late Payments</u>.  In the event that any payment required under Section V (Reimbursement of Response Costs) or Section VI, Paragraph 7 (Stipulated Penalties) is not received when due, Interest shall continue to accrue on the unpaid balance through the date of payment.  Settling Defendant shall be liable for any such Interest pertaining to the payments required under Section V (Reimbursement of Response Costs).

7.     <u>Stipulated Penalties</u>.

a.     Settling Defendant shall be liable for stipulated penalties for late payments under Section V (Reimbursement of Response Costs) and for the Interest on late payments for Section V, as required under Section VI.  The stipulated penalties shall be in the following amounts per violation per Day that any such payment is late:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th Day |
| $1500 | 15th through 30th Day |
| $2500 | 31st Day and beyond |

Each of the payments required under Section V (Reimbursement of Response Costs) shall be considered a separate violation for purposes of calculating stipulated penalties under this provision.

b.     Settling Defendant shall be liable for stipulated penalties in the amount of $1500 per Day per violation of the provisions contained in Sections VII (Notice to Successors-in-Title), XII (Access To Information), and XIII (Retention of Records).

8.     All Interest and penalties set forth under this Section shall begin to accrue on the Day a violation occurs, and shall continue to accrue through the final Day of the correction of the noncompliance.  Nothing herein shall prevent the

1    simultaneous accrual of separate penalties for separate violations of this Consent

2    Decree.

3        9.     Interest and stipulated penalties shall accrue as provided in

4    Paragraphs 6 and 7, regardless of whether EPA or DTSC has notified Settling

5    Defendant of the violation or made a demand for payment, but need be paid only

6    upon demand.

7        10.     Interest and stipulated penalties set forth under this Section shall be

8    due and payable within 30 Days of the date of demand for payment. All payments

9    to the United States under this Paragraph shall be made by certified or cashier's

10    check made payable to the "EPA Hazardous Substances Superfund," shall be

11    forwarded to:

12
13       US Environmental Protection Agency
         Superfund Payments
14       Cincinnati Finance Center
         PO Box 979076
15       St. Louis, MO 63197-9000,

16    shall indicate that payment is for Interest and/or stipulated penalties, and shall

17    reference EPA Region IX, the Site/Spill Identification Numbers 09-8V, the USAO

18    File Number, the DOJ Case Number 90-11-2-09232, and the name and address of

19    the party making payment. Copies of check(s) paid pursuant to this Paragraph,

20    and any accompanying transmittal letter(s), shall be forwarded to the DOJ and the

21    EPA as provided in Section XIV (Notices and Submissions), and to David Wood,

22    PMD-6, Section Chief, U.S. EPA Region IX, 75 Hawthorne Street, San Francisco,

23    California, 94105. Payment to DTSC under this Paragraph shall be made by

24    certified check or cashier's check, made payable to "Cashier of the Department of

25    Toxic Substances Control," and shall be forwarded to the Department of Toxic

26    Substances Control, State of California, Accounting Office, 1001 I Street,

27    Sacramento, California, 95812. Settling Defendant shall send a transmittal letter

28    with the check, referencing the San Gabriel Superfund Sites, Area 4 (Puente

Valley Operable Unit), Project Code No. 300346.  Settling Defendant also shall send notice, including a copy of the check and transmittal letter, to DTSC as provided in Section XIV (Notices and Submissions).

11.    Notwithstanding any other provision of this Section, the United States and/or DTSC may, in its unreviewable discretion, waive any portion of Interest or stipulated penalties that have accrued pursuant to this Consent Decree.

12.    Payments made under Paragraphs 4 through 10 shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

13.    In addition to the Interest and Stipulated Penalty payments required by this Section and any other remedies or sanctions available to the United States by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree, if the United States and/or DTSC brings an action against Settling Defendant to enforce this Consent Decree, and the claims made by the United States and/or DTSC are not arbitrary and capricious, Settling Defendant shall reimburse the United States and/or DTSC for all costs of such action, including but not limited to costs of attorney time.

**VII. NOTICE TO SUCCESSORS-IN-TITLE**

14.    Within fifteen (15) Days after the entry of this Consent Decree, Settling Defendant shall record a notice of the entry of this Consent Decree with the Recorder's Office, Los Angeles County, State of California.  Thereafter, each deed, title, or other instrument conveying an interest in the Property included in the Site shall contain a notice stating that the Property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree.

a.    The obligations of Settling Defendant with respect to the provisions of this Paragraph and Section XI (Site Access) shall be binding upon any and all persons who subsequently acquire any such interest or portion thereof

-15-

1  (hereinafter "Successors-in-Title").  Within fifteen (15) Days after entry of this

2  Consent Decree, Settling Defendant shall record at the Recorder's Office a notice

3  of obligation to provide access under Section XI (Site Access).  Each subsequent

4  instrument conveying an interest to any such Property included in the Site shall

5  reference the recorded location of such notice.

6        b.   Settling Defendant and any Successor-in-Title shall, at

7  least thirty (30) Days prior to the conveyance of any such interest, give written

8  notice of this Consent Decree to the grantee and written notice to EPA of the

9  proposed conveyance, including the name and address of the grantee, and the date

10  on which notice of the Consent Decree was given to the grantee.  In the event of

11  any such conveyance, Settling Defendant's obligations under this Consent Decree,

12  including its obligation to provide or secure access pursuant to Section XI (Site

13  Access), to the extent that such Settling Defendant has access rights to the

14  Property, shall continue and shall also be met by the Successor-in-Title.  In no

15  event shall the conveyance of an interest in the Property release or otherwise affect

16  the liability of Settling Defendant to comply with this Consent Decree.

17

18  **VIII.   COVENANT NOT TO SUE BY PLAINTIFFS**

19      15.   Covenant Not to Sue.  Except as specifically provided in Paragraph

20  16 (Reservation of Rights),  Plaintiffs covenant not to sue or to take any

21  administrative action against Settling Defendant for performance of Response

22  Work, Past Response Costs, Future Response Costs, Past DTSC Response Costs,

23  and Future DTSC Response Costs ("Matters Addressed"),  pursuant to Section

24  7003 of RCRA, 42 U.S.C. § 6973, or Sections 106 and 107(a) of CERCLA, 42

25  U.S.C. §§ 9606 and 9607(a).  This covenant shall take effect upon receipt by

26  Plaintiffs of the payments set forth in Paragraphs 4 and 5.  This covenant is

27  conditioned upon Settling Defendant's satisfactory performance of its obligations

28  under this Consent Decree.  This covenant extends only to Settling Defendant and

-16-

1  does not extend to any other person.

2      16.   <u>Reservation of Rights</u>.  The covenant not to sue set forth in Paragraph

3  15 does not pertain to any matters other than the Matters Addressed.  The

4  Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights

5  against Settling Defendant with respect to other matters, including but not limited

6  to:

7          a.   liability for failure by Settling Defendant to meet a requirement

8  of this Consent Decree;

9          b.   liability for damages for injury to, destruction of, or loss of

10  natural resources, and for the costs of any natural resource damage assessments;

11

12          c.   criminal liability; and

13          d.   liability for response actions and response costs incurred or to

14  be incurred by the United States and/or DTSC not covered as Matters Addressed

15  as set forth in Paragraph 15 of this Consent Decree, including but not limited to

16  liability for any response actions and response costs at the Site that occur after the

17  later of (i) the date 8 years from the Operational and Functional Date of the Carrier

18  Consent Decree, or (ii) the date of issuance of a final Record of Decision for the

19  Site.

20  **IX.   COVENANT NOT TO SUE BY SETTLING DEFENDANT**

21      17.   Settling Defendant covenants not to sue and agrees not to assert any

22  claims or causes of action against Plaintiffs or their contractors or employees with

23  respect to the Matters Addressed, as set forth in this Consent Decree, including

24  but not limited to:

25          a.   any direct or indirect claims for reimbursement from the

26  Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or

27  113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9512, or 9613, or any

28  other provision of law;

b.     any claims arising out of costs or response actions at or in connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; and

c.     any claims against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, related to the Site.

18.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or  40 C.F.R. § 300.700(d).

**X.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION**

19.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

20.     The Parties agree that in consideration of the payment made by Settling Defendant and the execution of this Consent Decree, Settling Defendant has resolved its liability to Plaintiffs and is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for Matters Addressed in this Consent Decree, conditioned only upon entry of this Consent Decree.  The Matters Addressed in this Consent Decree are listed in Paragraph 15 above.  The Matters Addressed exclude those response actions and response costs to which Plaintiffs have reserved their rights under this Consent Decree.

21.     Settling Defendant agrees that, with respect to any suit or claim for contribution brought by Settling Defendant for matters related to this Consent

-18-

Decree, Settling Defendant will notify DOJ, EPA, and DTSC in writing not later than sixty (60) Days prior to the initiation of such suit or claim. Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against Settling Defendant for matters related to this Consent Decree, Settling Defendant will notify DOJ, EPA, and DTSC in writing within ten (10) Days of service of the complaint or claims upon Settling Defendant. In addition, Settling Defendant shall notify DOJ, EPA, and DTSC within ten (10) Days of service or receipt of any motion for summary judgment or any order from a court setting a case for trial, for matters related to this Consent Decree.

22.    In any subsequent administrative or judicial proceeding initiated by the United States or DTSC for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claims based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DTSC in the subsequent proceeding were or should have been brought in the instant case; *provided, however*, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiffs set forth in Section VIII.

## XI.  SITE ACCESS

23.    Commencing upon the date of lodging of this Consent Decree, Settling Defendant agrees to provide the United States and DTSC and their representatives, including the EPA, the DTSC, and the Los Angeles Regional Water Quality Control Board, and their contractors, access at all reasonable times to the Property within the Site owned or controlled by Settling Defendant to which access is determined by the EPA or DTSC to be required for the implementation of this Consent Decree, or for the purpose of conducting any response activity related to the Site, including but not limited to:

-19-

a.   Monitoring of investigation, removal, remedial or other activities at the Site;

b.   Verifying any data or information submitted to the United States or to DTSC;

c.   Conducting investigations relating to contamination at or near the Site;

d.   Obtaining samples;

e.   Assessing the need for, planning, or implementing response actions at or near the Site; and

f.   Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XII (Access to Information).

24.  Notwithstanding any provision of this Consent Decree, the United States and DTSC retain all of their access authorities and rights, including enforcement authorities related thereto, under CERCLA, the Resource Conservation and Recovery Act, 42 U.S.C. § 6927, and any other applicable statutes or regulations.

## XII.   ACCESS TO INFORMATION

25.  Settling Defendant shall provide to Plaintiffs, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating in any manner to response actions taken at the Site or the liability of any person for response actions conducted and to be conducted at the Site, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site.

26.  <u>Confidential Business Information and Privileged Documents</u>.

a.   Settling Defendant may assert business confidentiality claims

-20-

1   covering part or all of the documents or information submitted to Plaintiffs under
2   this Consent Decree to the extent permitted by and in accordance with Section
3   104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).
4   Documents or information determined to be confidential by Plaintiffs will be
5   accorded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of
6   confidentiality accompanies documents or information when they are submitted to
7   the Plaintiffs, or if Plaintiffs have notified Settling Defendant that the documents
8   or information are not confidential under the standards of Section 104(e)(7) of
9   CERCLA, the public may be given access to such documents or information
10   without further notice to Settling Defendant.
11          b.      Settling Defendant may assert that certain documents, records
12   or other information are privileged under the attorney-client privilege or any other
13   privilege recognized by federal law.  If Settling Defendant asserts such a privilege
14   in lieu of providing documents, they shall provide Plaintiffs with the following:  1)
15   the title of the document, record, or information; 2) the date of the document,
16   record, or information; 3) the name and title of the author of the document, record,
17   or information; 4) the name and title of each addressee and recipient; 5) a
18   description of the subject of the document, record or information; and 6) the
19   privilege asserted.  However, no documents, reports, or other information created
20   or generated pursuant to the requirements of this or any other consent decree with
21   Plaintiffs shall be withheld on the grounds that they are privileged.  If a claim of
22   privilege applies only to a portion of a document, the document shall be provided
23   to Plaintiffs in redacted form to mask the privileged information only.  Settling
24   Defendant shall retain all records and documents that it claims to be privileged
25   until Plaintiffs have had a reasonable opportunity to dispute the privilege claim
26   and any such dispute has been resolved in the Settling Defendant's favor.
27          27.     No claim of confidentiality shall be made with respect to any data,
28
-21-

1   including but not limited to, all sampling, analytical, monitoring, hydrogeologic,

2   scientific, chemical, or engineering data, or any other documents or information

3   evidencing conditions at or around the Site.

### XIII.   RETENTION OF RECORDS

5   28.   Until ten (10) years after the entry of this Consent Decree, Settling

6   Defendant shall preserve and retain all records and documents now in its

7   possession or control, or which come into its possession or control thereafter, that

8   relate in any manner to response actions taken at the Site or the liability of any

9   person for response actions conducted and to be conducted at the Site, regardless

10   of any corporate retention policy to the contrary.  After five (5) years, Settling

11   Defendant may contact the EPA in writing to request instructions as to whether

12   such records and documents shall be maintained for the remaining five (5) year

13   retention period, or whether such records and documents may be discarded.  No

14   retained records or documents shall be disposed of prior to the ten (10) year

15   retention period, unless Settling Defendant receives instructions from the EPA

16   specifically permitting Settling Defendant to dispose of such records and

17   documents.

18   

19   29.   After the conclusion of the ten (10) year document retention period in

20   the preceding Paragraph, Settling Defendant shall notify the EPA and the DOJ at

21   least ninety (90) Days prior to the destruction of any such records or documents,

22   and, upon request by the EPA or the DOJ, Settling Defendant shall deliver any

23   such records or documents to EPA subject to the same privilege provisions set

24   forth in Section XII (Access To Information).

25   30.   By signing this Consent Decree, Settling Defendant certifies that,

26   after thorough inquiry, to the best of its knowledge and belief, Settling Defendant

27   has not altered, mutilated, discarded, destroyed, or otherwise disposed of any

28   records, documents, or other information relating to its potential liability regarding

1 | the Site, after notification of potential liability or the filing of a suit against

2 | Settling Defendant regarding the Site; and that Settling Defendant has fully

3 | complied with any and all EPA requests for information regarding the Site

4 | pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and

5 | 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

6 | **XIV.   NOTICES AND SUBMISSIONS**

7 |     31.    Whenever, under the terms of this Consent Decree, notice is required

8 | to be given or a document is required to be forwarded by one party to another, it

9 | shall be directed to the individuals at the addresses specified below, unless those

10 | individuals or their successors give notice of a change to the other Parties in

11 | writing.  Written notice as specified herein shall constitute complete satisfaction of

12 | any written notice requirement of the Consent Decree with respect to the United

13 | States (the DOJ and the EPA), DTSC, and Settling Defendant, respectively.

14 |

15 | <u>As to the United States</u>:

16 | <u>As to DOJ</u>:

17 | Bruce S. Gelber
Chief, Environmental Enforcement Section

18 | Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-09232)

19 | P.O. Box 7611
Washington, D.C. 20044-7611

20 |

21 | Elise S. Feldman
Trial Attorney

22 | Environmental Enforcement Section
Environment and Natural Resources Division

23 | U.S. Department of Justice
301 Howard Street, Suite 1050

24 | San Francisco, CA 94105

25 | <u>As to EPA</u>:

26 | Dustin Minor (ORC-3)
Acting Branch Chief

27 | Hazardous Waste Branch
U.S. Environmental Protection Agency, Region IX

28 | 75 Hawthorne Street
San Francisco, California 94105

-23-

As to DTSC:

Ann Rushton
Deputy Attorney General, Environment Section
California Department of Justice
300 South Spring Street
Los Angeles, California 90013

Jacalyn Spiszman
Project Manager, Site Mitigation Branch
Department of Toxic Substances Control, Region 3
5796 Corporate Avenue
Cypress, California 90630

As to Settling Defendant:

Paul D. Rasmussen
Dongell Lawrence Finney LLP
707 Wilshire Boulevard, 27th Floor
Los Angeles, CA 90017-3609
Telephone: (213)-943-6100
Facsimile: (213)-943-6101
e-mail: PRasmussen@d.flawyers.com

Attorney for Settling Defendant Valley-Proctor LLC

Settling Defendant may change the identity or contact information for its agent at any time by written notice to the Court and to the United States.

## XV. RETENTION OF JURISDICTION

32. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI. INTEGRATION/APPENDICES

33. This Consent Decree and its appendix constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendix is attached to and incorporated into this Consent Decree: "Appendix A" is the relevant portions of the Carrier Consent Decree.

-24-

## XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

34.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

35.    If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVIII.   EFFECTIVE DATE

36.    The Effective Date of this Consent Decree shall be the date upon which it is entered by the Court.

## XIX.   SIGNATORIES/SERVICE

37.    Each undersigned representative of the Settling Defendant, the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, and together for DTSC, the Deputy Attorney General and the Chief of Operations, Southern California Cleanup Operations Branch Cypress Office, certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

38.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

39.    Settling Defendant shall identify, on the attached signature page, the

1  name and address of an agent who is authorized to accept service of process by

2  mail on behalf of that Party with respect to all matters arising under or relating to

3  this Consent Decree. If no agent is specified, the attorney for Settling Defendant

4  listed at the beginning of this document shall be deemed to be the agent authorized

5  to accept service at the address listed. Settling Defendant hereby agrees to accept

6  service in that manner and to waive the formal service requirements set forth in

7  Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of

8  this Court, including, but not limited to, service of a summons.

9                              XI.   FINAL JUDGMENT

10       40.    Upon approval and entry of this Consent Decree by this Court, this

11 Consent Decree shall constitute a final judgment between and among the United

12 States, DTSC, and Settling Defendant. The Court finds that there is no just reason

13 for delay and therefore enters this judgment as the final judgment under Fed. R.

14 Civ. P. 54 and 58.

15

16

17

18 SO ORDERED THIS _13_ DAY OF ____April____, 2007.

19

20                              _____Audrey B. Collins_____

21                              Name: Audrey B Collins
                                United States District Judge

22

23

24

25

26

27

28

Attachment A
-30-

1      THE UNDERSIGNED PARTY enters into this Consent Decree, relating to

2  the San Gabriel Valley Superfund Site, Area 4, and further identified as the Puente

3  Valley Operable Unit.

4

5                       FOR THE UNITED STATES OF AMERICA

6

7

8  Dated:_____

9                     JOHN C. CRUDEN
                       Acting Assistant Attorney General

10                   Environment & Natural Resources Division
                     United States Department of Justice

11

12

13  Dated: 2/20/09

14                     ELISE S. FEEDMAN
                     Trial Attorney

15                     Environmental Enforcement Section
                     Environment & Natural Resources Division

16                     United States Department of Justice
                     301 Howard Street, Suite 1050

17                     San Francisco, CA 94105
                     Telephone: (415) 744-6470

18                     Telecopier: (415) 744-6476

19

20

21

22

23

24

25

26

27

28

Attachment A
-3 1-

1  Dated: 9/29/08

2  KEITH TAKATA
   Director
   Superfund Division
3  U.S. Environmental Protection Agency
   Region 9
4  75 Hawthorne Street
   San Francisco, CA 94105

5  Dated: 9/23/08

6  DUSTIN MINOR
   Acting Chief
7  Hazardous Waste Branch
   Office of Regional Counsel
8  U.S. Environmental Protection Agency
   Region 9
9  75 Hawthorne Street
   San Francisco, CA 94105

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A

THE UNDERSIGNED PARTY enters into this Consent Decree, relating to the San Gabriel Valley Superfund Site, Area 4, and further identified as the Puente Valley Operable Unit.

FOR THE STATE OF CALIFORNIA
DEPARTMENT OF TOXIC
SUBSTANCES CONTROL

Dated: _8/26/08_

GREG HOLMES
Unit Chief
Brownfields and Environmental
Restoration Program - Cypress
Department of Toxic Substances Control
Cypress Office
5796 Corporate Avenue
Cypress, California 90630

Dated: _Sept. 3, 2008_

ANN RUSHTON
Deputy Attorney General
Environment Section
California Department of Justice
300 South Spring Street
Los Angeles, California 90013

-29-

Attachment A

-33-

1   THE UNDERSIGNED PARTY enters into this Consent Decree, relating to

2   the San Gabriel Valley Superfund Site, Area 4, and further identified as the Puente

3   Valley Operable Unit.

4                                   FOR VALLEY-PROCTOR LLC
                                    (f/k/a Valley Proctor Partnership)
5

6

7   Dated: _8/21/08_          _Philip A. Piet_

8                                   Phillip A. Piet, President
                                    5714 N. Rudd Tank Road
                                    Flagstaff, Arizona 86001
9                                   (928)527-0602

10

11

12                                  name and address of agent authorized
                                    to receive service of process pursuant to
13                                  Paragraph 39:

14                                  Dongell Lawrence Finney LLP
                                    707 Wilshire Boulevard, 45th Floor
15                                  Los Angeles, CA 90017-3609

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Appendix A</u>

<u>Relevant Portions of the Carrier Consent Decree</u>

-31-



**ORIGINAL**

1  SUE ELLEN WOOLDRIDGE
   Assistant Attorney General
2  Environment & Natural Resources Division
   United States Department of Justice
3
   MATTHEW A. FOGELSON
4  Environmental Enforcement Section
   Environment & Natural Resources Division
5  United States Department of Justice
   301 Howard Street, Suite 1050
6  San Francisco, CA 94105
   Telephone: (415) 744-6470
7  Facsimile: (415) 744-6476
   E-mail: Matthew.Fogelson@usdoj.gov
8
   ELIZABETH F. KROOP
9  Environmental Enforcement Section
   Environment & Natural Resources Division
10 United States Department of Justice
   P.O. Box 7611
11 Ben Franklin Station
   Washington, DC 20044
12 Telephone: (202) 514-5244
   Facsimile: (202) 514-2583
13 E-mail: Elizabeth.Kroop@usdoj.gov

14 Additional Counsel Listed on Next Page

15

16           IN THE UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
17                    WESTERN DIVISION

18 UNITED STATES OF AMERICA,        )   Case No. CV-05-6022 ABC (FMOx)
                                     )
19            Plaintiff,             )
                                     )   AMENDED CONSENT DECREE
20       v.                         )
                                     )
21 CARRIER CORPORATION,             )
                                     )
22            Defendant.            )
                                     )
23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT
APR 2 5 2006
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
APR 2 8 2006
CENTRAL DISTRICT            CALIFORNIA
                           DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
APR 26 2006
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

___ Priority
___ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3
___ Scan only

29

### III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

### IV. DEFINITIONS

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder the following definitions shall apply:

"Basin-wide Response Costs" shall mean costs, including but not limited to

-4-

1   direct and indirect costs, including accrued Interest, that the United States has
2   incurred or in the future incurs for basin-wide (non-operable unit) response actions
3   in connection with the San Gabriel Valley Superfund Sites, Areas 1 – 4.

4       "CERCLA" shall mean the Comprehensive Environmental Response,
5   Compensation,   and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.
6   "Consent Decree" shall mean this Decree and all appendices attached hereto (listed
7   in Section XXX). In the event of conflict between this Decree and any appendix,
8   this Decree shall control.

9       "Day" shall mean a calendar day unless expressly stated to be a working
10  day. "Working Day" shall mean a day other than a Saturday, Sunday, or Federal
11  holiday. In computing any period of time under this Consent Decree, where the
12  last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run
13  until the close of business of the next working day.

14      "DOJ" shall mean the United States Department of Justice and any of its
15  successor departments, agencies, or instrumentalities.

16      "DTSC" shall mean the California Department of Toxic Substances Control
17  and any successor departments or agencies.

18      "Effective Date" shall be the effective date of this Consent Decree as
19  provided in Paragraph 117.

20      "Eligible SEP Costs" shall include the costs of implementing the
21  Supplemental Environmental Project (SEP) required pursuant to Section XVIII,
22  but do not include Settling Defendants' overhead, administrative expenses or legal
23  fees. Contractor oversight costs not exceeding 5% of $468,750 may be included as
24  Eligible SEP Costs, so long as adequate documentation is provided.

25      "EPA" shall mean the United States Environmental Protection Agency and
26  any of its successor departments or agencies.

27      "Explanation of Significant Differences" or "ESD" shall mean the
28  Explanation of Significant differences relating to the Site issued by EPA on June

1    14, 2005. The E... is attached as Appendix B to this Consent Decree.

2      "Future Response Costs" shall mean all costs that are incurred by the United

3    States or any third party for response actions with respect to the Site after the

4    Effective Date, but prior to the later of (i) the date 8 years from the Operational and

5    Functional Date ... (ii) the date of issuance of a final ...cord of Decision for the

6    Site. Future Response Costs include, but are not limited to, Basin-wide Response

7    Costs allocated to the Site, direct and indirect costs and accrued interest that the

8    United States in... s in reviewing or developing plans, reports, and other items

9    pursuant to this Consent Decree, verifying the Work, or otherwise implementing,

10    overseeing, or enforcing this Consent Decree, including but not limited to payroll

11    costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to

12    Sections VII (Remedy Review), IX (Access and Institutional Controls; including

13    but not limited ... the cost of attorney time and any ...ories paid to secure access or

14    to secure or implement institutional controls including but not limited to the

15    amount of just compensation), XV (Emergency Response), and Paragraph 99 of

16    Section XXII (Work Takeover).

17      "Interest," shall mean interest at the rate specified for interest on investments

18    of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507,

19    compounded annually on October 1 of each year, in accordance with 42 U.S.C.

20    § 9607(a). Th... plicable rate of interest shall be ... ate in effect at the time the

21    interest accrues. The rate of interest is subject to change on October 1 of each

22    year.

23      "Interim ... OD" shall mean the Interim Record ... Decision relating to the

24    Puente Valley Operable Unit of the San Gabriel Valley Superfund Sites signed on

25    September, 30 ...03 by the Regional Administrator, EPA Region 9, or his/her

26    delegate, and all attachments thereto. The Interim ROD is attached as Appendix A

27    to this Consent Decree.

28      "Mid-Valley Monitoring" shall mean the installation and monitoring of

1  wells in the i  diate and deep groundwater zon   the mid-valley area of the

2  Site to monitor  ertical and horizontal contaminant migration in such groundwater

3  zones, as set fo   in the SOW. For purposes of this Consent Decree, the mid-

4  valley shall ex   d from Azusa Avenue to Puente Creek.

5      "Nation  Contingency Plan" or "NCP" shall      the National Oil and

6  Hazardous Sub  ances Pollution Contingency Plan promulgated pursuant to

7  Section 105 of   RCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300,

8  and any amen   nts thereto.

9      "Opera  al and Functional" shall mean that   Remedial Action, or a

10  phase thereof,  as been constructed and that it is performing in accordance with the

11  applicable SO   and the applicable final Remedial Design/ Remedial Action Work

12  Plans and other plans approved by EPA.

13      "Opera  al and Functional Date" shall mean   he date that all phases of the

14  Remedial Action  are Operational and Functional pursuant to Paragraph 50.

15      "Paragr  " shall mean a portion of this Consent Decree identified by an

16  Arabic nume   or an upper case letter.

17      "Parties  shall mean the United States and the Settling Defendants.

18      "Past R ponse Costs" shall mean all costs, including but not limited to

19  Basin-wide R ponse Costs allocated to the Site, direct and indirect costs,

20  including Int   , that the United States or any thi   arty has paid or incurred at

21  or in connectio  with the Site, through and including the Effective Date.

22      "Perfo ance Criteria" shall mean the prevention of groundwater in the

23  shallow zon   h of Puente Creek at the mouth  uente Valley with

24  contaminatio  reater than or equal to ten-times the  vels listed in Table 2 of the

25  ESD from:

26          migrating beyond its lateral exte   measured at the time the

27          allow zone Remedial Action contai   nt system is Operational and

28          ctional; and

-7-

(2) migrating vertically into the intermediate zone;

for a period of 8 years from the Operational and Functional Date.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C.

§§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Remedial Action" shall mean those activities to be undertaken by Settling Defendants to implement the shallow zone remedy north of Puente Creek and Mid-Valley Monitoring in accordance with the Interim ROD as modified by the ESD, the applicable SOW, and the applicable Remedial Design/Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"SEP" shall mean the Woodland Duck Farm Supplemental Environmental Project as described in Paragraph 62, or any alternate Supplemental Environmental Project approved by EPA pursuant to Paragraph 63.

"SEP Implementation Plan" shall the mean the document describing the SEP and setting forth those activities required to implement the SEP.

"Settling Defendants" shall mean Carrier Corporation and United Technologies Corporation.

1    "Site" sh mean the area of groundwater conta ination in Los Angeles

2    County, Califor located in the geographic area desi nated on the National

3    Priorities List a San Gabriel Valley Superfund Sit , Area 4 [see 49 Fed. Reg.

4    19480 (1984)] identified as the Puente Valley Op able Unit.

5        "State" mean the California Department Toxic Substances Control

6    ("DTSC").

7        "Statem f Work" or "SOW" shall mean the statement of work for

8    implementation f the Remedial Design and Remedial Action at the Site, as set

9    forth in Appen D to this Consent Decree and any modifications made in

10   accordance wit this Consent Decree.

11       "Super sing Contractor" shall mean the principal contractor retained by the

12   Settling Defen s to supervise and direct the implementation of the Work under

13   this Consent ee.

14       "Unilateral Administrative Order Docket No. 2001-20" or "UAO Docket

15   No. 2001-20 ll mean the order issued by EPA to Carrier Corporation on or

16   about Septem 3, 2001.

17       "Unite es" shall mean the United States merica.

18       "Waste terial" shall mean (1) any "hazardous substance" under Section

19   101(14) of C LA, 42 U.S.C. § 9601(14); (2) an pollutant or contaminant

20   under Sectio 33) of CERCLA, 42 U.S.C. § 9 33); (3) any "solid waste"

21   under Section 004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous

22   material" un the California Hazardous Waste Control Act Section 25100 et seq.

23       "Wor ll mean all activities Settling Defe ants are required to perform

24   under this C t Decree, except those required ction XXVI (Retention of

25   Records) an action XVIII (Supplemental Environ ental Projects).

26                            V. GENERAL PROVISION

27       5.     ctives of the Parties. The objective of the Parties in entering into

28   this Consen ree are to protect public health or elfare or the environment at

-9-

1    Decree.

2                    XIV. CERTIFICATION OF COMP— —ION

3        50.    "Ope—ational and Functional"

4            a.    Within 30 Days after Settling Defendants conclude that the

5    Remedial Actio— —Operational and Functional, Settling Defendants shall schedule

6    and conduct a p—certification inspection to be attended —y Settling Defendants

7    and EPA. If, a— the pre-certification inspection, the Settling Defendants still

8    believe that the Remedial Action is Operational and Functional, they shall submit a

9    written report re—ting certification to EPA for approval, with a copy to the

10   State, pursuant to Section XI (EPA Approval of Plans and Other Submissions)

11   within 30 Days of the inspection. In the report, a registered professional engineer

12   and the Settling Defendants' Project Coordinator shall state that the Remedial

13   Action is Operational and Functional. The written report shall include as-built

14   drawings signed and stamped by a professional engineer. The report shall contain

15   the following statement, signed by a responsible corporate official of a Settling

16   Defendant or the Settling Defendants' Project Coordinator:

17            To the best of my knowledge, after thorough investigation, I certify
             that the information contained in or accompanying this submission is
18           true, accurate and complete. I am aware that there are significant
             penalties for submitting false information, including the possibility of
19           fine and imprisonment for knowing violations.

20   If, after completion of the pre-certification inspection and receipt and review of the

21   written report, EPA, after reasonable opportunity to review and comment by

22   DTSC, determines that the Remedial Action is not Operational and Functional,

23   EPA will notify Settling Defendants in writing of the activities that must be

24   undertaken by Settling Defendants pursuant to this Consent Decree in order for the

25   Remedial Action to be Operational and Functional. EPA will set forth in the notice

26   a schedule for performance of such activities consistent with the Consent Decree

27   and the SOW or require the Settling Defendants to submit a schedule to EPA for

28   approval pursuant to Section XI (EPA Approval of Plans and Other Submissions),

Appendix A - 39
Attachment A
-43-

1    Settling Defend     shall perform all activities described in the notice in

2    accordance with the specifications and schedules established pursuant to this

3    Paragraph, subj     to their right to invoke the dispute resolution procedures set

4    forth in Section    X (Dispute Resolution).

5              b.        If EPA concludes, based on the     al or any subsequent report

6    requesting cert    cation, and after a reasonable opportunity for review and

7    comment by D   3C, that the Remedial Action is Operational and Functional, EPA

8    will so certify   writing to Settling Defendants.

9              c.        If EPA fails to certify that the Remedial Action is Operational

10   and Functional within 90 Days after a request, EPA shall be deemed to have denied

11   the request, un     Settling Defendants agree to an extension of time. Settling

12   Defendants ma     at any time thereafter, invoke Dispute Resolution pursuant to

13   Section XX (1     ute Resolution).

14             d.        Nothing herein shall preclude Settling Defendants from

15   requesting, an   EPA from granting, pursuant to the same procedures set forth in

16   Subparagraph     of this Paragraph, certification that a phase of the Remedial

17   Action is Operational and Functional; provided, however, that any such

18   certification sh   be conditioned on such phase remaining Operational and

19   Functional at   time Settling Defendants request certification for the final phase

20   of the Remed     ction. In the event Settling Defendants request certification that

21   a phase of the    medial Action is Operational and Functional, and such request is

22   granted, the     ting certification shall not affect the Operational and Functional

23   Date.

24             e.        Upon approval of the certification report by EPA or pursuant to

25   a ruling by     ourt, the Operational and Functional Date shall be the date when

26   the last repor     esting certification of the final phase of the Remedial Action

27   was submitte

28             The Operational and Functional Date established pursuant to

-34-

1  this Paragraph shall not be affected if existing contamination greater than or equal
2  to ten-times the levels listed in Table 2 of the SOW has migrated vertically into the
3  intermediate zone and this existing contamination prevents Settling Defendants
4  from meeting the Performance Criteria, provided the Settling Defendants are
5  taking the response actions determined by EPA to be necessary to reverse the trend
6  pursuant to the SOW.

7       g.      Once EPA has determined that the Remedial Action is
8  Operational and Functional pursuant to this Paragraph, the Operational and
9  Functional Date shall not be affected in the event EPA subsequently determines,
10  pursuant to Paragraph 13, that modification to the Work specified in the SOW or in
11  work plans developed pursuant to the SOW is necessary to achieve and maintain
12  the Performance Criteria, to meet discharge ARARs, or to implement Mid-Valley
13  Monitoring.

14      51.    Certification of Completion.

15       a.      No later than 90 Days before, and no sooner than 120 Days
16  prior to, the eight year anniversary of the Operational and Functional Date, and
17  upon Settling Defendants concluding that the Remedial Action is still Operational
18  and Functional, Settling Defendants shall schedule a pre-certification inspection to
19  be attended by Settling Defendants and EPA. The Settling Defendants shall submit
20  a Facility State Package to EPA which shall include but not be limited to, all
21  maintenance reports, performance reports, sampling results, and all other
22  deliverables updated as appropriate to reflect the performance and condition of the
23  containment and Mid-Valley Monitoring systems including all wells, pipelines,
24  and treatment facilities. If, after the pre-certification inspection, the Settling
25  Defendants still believe that the Remedial Action is Operational and Functional,
26  Settling Defendants shall submit a written report by a registered professional
27  engineer, in accordance with the SOW, stating that the Remedial Action is
28  Operational and Functional. The report shall contain the following statement,